NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1577

SOUTHWESTERN BELL TELEPHONE COMPANY,
(formerly known as Southwestern Bell Telephone, L.P.),

Plaintiff-Appellee,

v.

ARTHUR A. COLLINS, INC.,

Defendant-Appellant.

Adam V. Floyd, Vinson & Elkins L.L.P., of Austin, Texas, argued for plaintiff-appellee. With him on the brief were Willem G. Schuurman, Sandra G. Rodriquez, H. Kenneth Prol, and Matthew S. Wermager.

George C. Summerfield, Jr., Stadheim & Grear, Ltd., of Chicago, Illinois, argued for defendant-appellant. With him on the brief were Joseph A. Grear, Rolf O. Stadheim, Keith A. Vogt, and Steven R. Pedersen.

Appealed from: United States District Court for the Northern District of Texas

Judge Jane J. Boyle

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1577

SOUTHWESTERN BELL TELEPHONE COMPANY,
(formerly known as Southwestern Bell Telephone, L.P.),

Plaintiff-Appellee,

v.

ARTHUR A. COLLINS, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the Northern District of Texas in case no. 3:04-CV-0669, Judge Jane J. Boyle.

_____

DECIDED:  May 27, 2008

_____

Before GAJARSA, Circuit Judge, CLEVENGER, Senior Circuit Judge, and MOORE, Circuit Judge.

MOORE, Circuit Judge.

Arthur A. Collins, Inc. (Collins) appeals on a multitude of grounds the judgment entered by the United States District Court for the Northern District of Texas. We affirm-in-part, vacate-in-part, and remand.

BACKGROUND

Southwestern Bell Telephone Company (Southwestern Bell) filed for a declaratory judgment of noninfringement and invalidity of the claims of Collins's U.S. Patents Nos. 4,797,589 ('589 patent) and 4,701,907 ('907 patent).  Collins counterclaimed, asserting infringement and seeking damages and injunctive relief.  In

November 2005, the district court ruled that the claim term "means for measuring," which is a limitation included in every claim of the '907 patent, could not be construed. In view of this ruling, Collins later stipulated to the invalidity of the '907 patent claims for indefiniteness, subject to its right to appeal the construction. On September 26, 2006, the court granted Southwestern Bell's motion for summary judgment that all the claims of the '589 patent were not literally infringed by Southwestern Bell's network because it lacked a "control store." On November 2, 2006, the court ruled on summary judgment that claims 4-14 of the '589 patent were invalid for improper reexamination amendment. The district court resolved Collins's remaining '589 patent infringement claims during pretrial proceedings, when it ruled as a matter of law that Collins could not demonstrate the presence of the "randomly receive" limitation, either literally or by equivalents. Southwestern Bell dismissed its remaining claims without prejudice, the district court entered judgment, and this appeal followed.

DISCUSSION

We review a grant of summary judgment without deference to the district court. See Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 401 F.3d 1367, 1370 (Fed. Cir. 2005) (citations omitted). We review claim construction de novo on appeal. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). We also review a judgment on prosecution history estoppel de novo on appeal. Wang Lab., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571, 1577 (Fed. Cir. 1997).

Collins appeals: (1) the judgment that the claims of the '907 patent are invalid for indefiniteness; (2) the grant of summary judgment that claims 4-14 of the '589 patent are invalid for improper reexamination amendment; (3) the grant of summary judgment

of no literal infringement of claims 1-14 of the '589 patent for lack of a "control store"; (4) the claim construction of the "randomly" terms in the '589 patent claims; (5) the judgment that the "randomly receive" limitation in the '589 patent claims is not literally present in the accused combination; and (6) the judgment that prosecution history estoppel applies to exclude Collins from offering evidence of equivalents of certain claim limitations for claims 1-3 of the '589 patent. We consider each issue in turn.[1]

### I. The '907 Patent

We agree with the district court that the term "means for measuring," which is a limitation included in every claim of the '907 patent, cannot be construed[2] because there is no clear link or association between (1) the "means for measuring" claim language and (2) any corresponding structure in the specification. Collins has a duty to link the claimed function of measuring the timing adjustment interval to a structure in the specification as the price for being allowed to express the claim as a means-plus-function claim under 35 U.S.C. § 112, ¶ 6. Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1377 (Fed. Cir. 2001); Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1211 (Fed. Cir. 2003). Collins identifies the "variable modulus counter" as the structure for accomplishing the means for measuring. The "variable modulus counter" "controls the value of the modulus used in the digital switch connection with the feedback signal, access control word." '907 patent col.8 ll.33-37. But the specification

---

[1] We need not address the other claim construction issues that Collins and Southwestern Bell raise on appeal because our resolution of these six issues disposes of the entire appeal.

[2] Two district courts have actually concluded that this very "means for measuring" limitation was incapable of construction. See also Arthur A. Collins, Inc. v. Northern Telecom Ltd., No. 98-380-A (E.D. VA May 23, 2005) (claim construction opinion).

in no way associates the "variable modulus counter" with the claimed function of measuring the timing adjustment interval. See id. When no structure in the specification is linked to the function in a means-plus-function claim element, that claim is indefinite. 35 U.S.C. § 112 ¶ 2. We affirm the district court's determination that all claims of the '907 patent are invalid.

II.     Claims 4-14 of the '589 Patent—Reexamination for Improper Purpose

The district court properly granted summary judgment that claims 4-14 of the '589 patent are invalid for improper claim amendment under 35 U.S.C. § 305. Under 35 U.S.C. § 305, a patent owner may propose an amendment to its patent to distinguish the claimed invention from the prior art or to respond to an adverse decision as to the patentability of one of the claims. Claim amendments during reexamination are limited to "amendment in light of prior art raising a substantial new question of patentability." In re Freeman, 30 F.3d 1459, 1468 (Fed. Cir. 1994). As in Freeman, Collins cannot use reexamination for the purpose of amending its claims to address an adverse claim construction. We agree with the district court that Collins "presented no evidence to contradict its stated purpose for amending the claims of the '589 patent," which was "to preclude any interpretation of the claims in accordance with the district court's opinions . . . in the litigation with Nortel." We therefore affirm the grant of summary judgment that claims 4-14 of the '589 patent are invalid.

III.     Claims 1-3 of the '589 Patent—"Control Store"

We affirm the grant of summary judgment of no literal infringement of claims 1-3 of the '589 patent because the accused combination lacks a "control store." The district

court construed "control store" based upon the context of the claim and the intrinsic record to mean:

> A control store is included within a single unified DRTST switching unit that includes a memory, processor and operating software that determines (1) which data circulating on the network loop is to be selected and diverted to the TST switch of a given switching node; (2) how that data passes through the TST switch; (3) which data is output from the TST switch back onto the network loop; (4) which data is to bypass the TST switch of that node.

Collins disagrees that at least one control store must perform all four functions, and argues that the specification "show[s] the use of distributed, multiple control stores." Appellant Br. at 20-21.

In claim 1 of the '589 patent, "a control store [is] <u>connected</u> to said bypass for receiving a variable number of dynamically selected channels from the plurality of channels, one or more of said channels comprising a control channel." '589 patent col.11 ll.35-38 (emphasis added). "[S]aid control store," meaning the same control store that is connected to the bypass, must respond to the "commands received through <u>said</u> control channels" to orchestrate the functions recited in claim 1. <u>Id.</u> col.12 ll.23-35 (emphasis added). While the DRTST may include multiple control stores, as discussed in the specification and acknowledged by the district court, the claims require that one of the claimed control stores must be connected to the bypass and receive a control channel. The claims further require that the same control store connected to the bypass must also perform the recited functions in response to the received commands. There is no dispute that under this construction the accused combination does not literally infringe. Accordingly, we affirm the grant of summary judgment that the accused combination does not literally infringe claims 1-3 of the '589 patent.

IV.     Claims 1-3 of the '589 Patent—Claim Construction of "Randomly Receive" and "Randomly Transmit"

We agree with the district court's construction of the "randomly receive" and "randomly transmit" limitations, which are found in claim 1 of the '589 patent and claims 2-3 by virtue of their dependence on claim 1.  Claim 1 of the '589 patent recites, among other elements, "said inlet ports of said TST switch being connected to randomly receive channels from said inlet line terminating units, said outlet ports of said TST switch being connected to randomly transmit channels to said outlet line terminating units for transferring data from said TST switch to said transmission media."  '589 patent col.12 ll.14-23 (emphasis added).  The district court construed the terms "randomly receive" and "randomly transmit" to:  "refer only to the writing of data into random positions of a memory, such as Random Access Memory ('RAM') and the reading out from such random position of a RAM, under program control from the control store."

Collins argues that the district court's claim construction erroneously requires writing data into non-sequential internal memory positions.   Collins's proposed construction, in contrast, is that data is "random" if it is in an order different than on the high speed transmission medium.  Appellant Br. at 39; see also Oral Arg. at 12:42-52, available       at       http://www.cafc.uscourts.gov/oralarguments/mp3/2007-1577.mp3 ("[B]ecause select data is being dropped from the high speed transmission medium, it is necessarily in an order different than the order in which it was on the high speed transmission medium, and therefore, it's randomized.").

Using the basic tenets of claim construction, the district court rejected Collins's proposed construction, and construed the "randomly" limitations to refer only to the writing of data into random positions of the inlet memory, i.e., not sequential positions.

In construing "randomly receive" and "randomly transmit," the district court considered the context of the surrounding claim language, which requires that the inlet ports must be connected to receive channels of data into random locations in its memory. Id. col.12 ll.14-16. The district court also considered the specification, which states: "Another aspect of the present invention allows the order of writing to the inlet data store and reading the outlet data store in a <u>random</u> order." Id. col.3 ll.34-39 (emphasis added). It continues:

> In accordance with the present invention, data is dynamically written <u>randomly</u> into the input memories and dynamically read <u>randomly</u> out from the output memories with transfer between the memories taking place via the middle space stage. This scheme is <u>contrary</u> to prior TST switches where data is written to the inlet memory and read from the outlet memory <u>sequentially</u>.

Id. col.5 ll.19-26 (emphasis added). Finally, the specification concludes: "Therefore, the order of writing to the inlet memory . . . is done in a <u>random</u> order." Id. col.5 ll.49-51 (emphasis added). In sum, the claim language and the specification confirm the district court's construction of "randomly receive" and "randomly transmit" in claim 1 of the '589 patent.

V.  Claims 1-3 of the '589 Patent—The District Court's Determination of Noninfringement of the "Randomly Receive" Limitation

Collins asks us to vacate the district court's pretrial judgment of noninfringement because the district court did not give Collins proper notice. Appellant Br. at 22. At the end of the pretrial hearing on July 20, 2007, the district court issued its claim construction on the "randomly receive" limitation,[3] and asked the parties what issues

---

[3]  While the court had not previously construed "randomly received," the parties had presented their respective positions in claim construction in 2005 at the Markman Hearing in 2005, and in summary judgment briefing in 2006.

remained for the jury. On July 23, 2007, the district court again asked the parties what issues remained outstanding, and requested the parties to submit briefing by the end of that same day on the effect of prosecution history estoppel.[4] The next day (July 24, 2007), in a telephone conference, the district court granted Southwestern Bell's motion in limine on prosecution history estoppel and also granted "judgment as a matter of law" that the "randomly receive" limitation is not literally present in the accused combination, later issuing its written order on August 1, 2007.

It is not entirely clear whether the district court's pretrial order was a judgment as a matter of law under Federal Rule of Civil Procedure Rule 50, a grant of summary judgment under Federal Rule of Civil Procedure Rule 56, a grant of the motion in limine, or some combination thereof. The order, which includes a section entitled "Judgment as a Matter of Law," grants the motion in limine to exclude evidence of equivalents, but also goes on to state that "as a matter of law, the randomly receive claim limitation is not literally present in the accused device. . . ." Collins argues that the district court improperly ruled on noninfringement when it resolved the motion in limine on the limited issue of prosecution history estoppel. We agree. The district court's judgment "as a matter of law" that the "randomly receive" limitation was not literally present in the accused combination was improper.

The district court's ruling cannot properly be considered one for judgment as a matter of law under Rule 50. Rule 50 only applies when a "party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to

---

[4] Southwestern Bell had previously filed a motion in limine to prevent Collins from presenting evidence or argument of equivalents due to prosecution history estoppel.

find for that party on that issue." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 151 (2000). When the district court granted judgment "as a matter of law," trial had not even begun in this case. Collins had not been fully heard on the issue of the literal presence of the "randomly receive" limitation in the accused combination.

Prior to trial, Rule 56, which pertains to summary judgment, governs. See Fed. R. Civ. P. 56. In the Fifth Circuit, Rule 56(c) requires ten days notice to a non-moving party, even when summary judgment is granted sua sponte. Powell v. United States, 849 F.2d 1576, 1579 (5th Cir. 1988); Fed. R. Civ. P. 56(c) ("The motion must be served at least 10 days before the day set for the hearing. . . ."). This ten-day requirement is intended to allow the non-moving party "to make every possible factual and legal argument." Id. at 1579. Nonetheless, a district court's failure to provide a nonmoving party ten days' notice may be "harmless if the nonmoving party admits that he has no additional evidence anyway or [if the] appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." Powell, 849 F.2d at 1582.

Collins did not receive ten days to make every possible factual and legal argument with respect to whether the accused combination literally satisfies the "randomly receive" limitation in claims 1-3 of the '589 patent. And in this case, the district court's error was not harmless because there is a potential dispute over material facts. See id. (concluding it was harmful error when party contended there was genuine issue of material fact but had no opportunity to submit evidence to support the contention). The district court based its determination that judgment as a matter of law was appropriate on a single piece of evidence—the deposition of Collins's expert Dr.

Wayne Grover. The district court concluded that Dr. Grover admitted that in the accused combination, the inlet port was "sequentially receiving [channels]." Collins argues that Dr. Grover's testimony did not pertain to the accused combination, but was actually in response to questions about the scope of the claims of the '589 patent. This is a potential dispute over a genuine issue of material fact regarding Dr. Grover's testimony—a dispute that Collins was not afforded time to address. This is precisely the situation for which the rules regarding adequate notice exist. See Powell, 849 F.2d at 1582. Therefore, we vacate the portion of the judgment that holds that as a matter of law, the accused combination does not satisfy the "randomly receive" limitation in claims 1-3 of the '589 patent.

Collins argues the district court improperly issued its judgment "under the guise of resolving an in limine motion on the narrow issue of prosecution history estoppel." Appellant Br. at 23. But Collins does not appeal the propriety of the district court's ability to rule on the motion in limine to exclude equivalents based on prosecution history estoppel. Collins does not make a "notice" argument regarding the grant of the motion in limine to exclude evidence of equivalents due to prosecution history estoppel. See Appellee Br. at 42. And Collins cites no missing evidence regarding a lack of notice with respect to prosecution history estoppel, in either its appeal or reply brief. Collins does appeal the merits of the ruling on prosecution history estoppel, which we now address.

VI.    Claims 1-3 of the '589 Patent—Prosecution History Estoppel

The district court excluded evidence of equivalents with respect to the "randomly receive" and "randomly transmit" claim limitations added during prosecution and

included in claims 1-3 of the '589 patent because prosecution history estoppel bars the application of the doctrine of equivalents for those limitations. Collins argues that the "randomly receive" and "randomly transmit" limitations were not added in response to a prior art rejection and that therefore, the district court erred in concluding that prosecution history estoppel bars application of the doctrine of equivalents for these limitations. We disagree. During prosecution of the '589 patent, the patent examiner rejected claim 1 as anticipated by one of Collins's prior patents, U.S. Patent No. 3,925,621 ('621 patent.) Collins amended the claims of the '589 patent to distinguish the TST memory configuration of the '621 patent, in which "input words are written <u>sequentially</u> into the inlet memory, and read <u>sequentially</u> from the outlet memories." '621 patent col.6 ll.14-16 (emphasis added). With respect to inlet port memories, Collins narrowed the original language from "said inlet ports connected to receive" to "said inlet ports <u>of said TST switch being</u> connected to <u>randomly</u> receive." Collins similarly narrowed the claim language relating to the outlet port memories from simply being connected for "transferring," to connected to "<u>randomly</u> transmit."

Collins's decision to narrow claims through amendment during prosecution creates a presumption that bars a finding of equivalents. <u>Festo Corp. v. Shoketsu Kinzuko Kogyo Kabushiki Co., Ltd.</u>, 535 U.S. 722, 734, 740 (2002). Collins has not met its burden of establishing that the reason for the amendment was unrelated to patentability. <u>Festo Corp. v. Shoketsu Kinzuko Kogyo Kabushiki Co., Ltd.</u>, 493 F.3d 1368, 1377 (Fed. Cir. 2007). Collins's amendment specifically addressed the prior art memory configurations found in the '621 patent. In response to the examiner's

rejection, Collins stated that claim 1 was amended "to more particularly define the present invention <u>and distinguish over the '621 reference</u>."

Collins argues that the amendments to "randomly receive" and "randomly transmit" were somehow tangential to the issue of patentability and were merely intended to "clarify" the claim. This argument lacks merit. An amendment is directly, and not tangentially, related to patentability when an applicant's narrowing additions to a claim along with an applicant's own statements in the prosecution history indicate that the amendment was made to distinguish over a reference. We conclude that the district court correctly determined that prosecution history estoppel bars the application of the doctrine of equivalents for the "randomly receive" and "randomly transmit" claim limitations added during prosecution and included in claims 1-3 of the '589 patent.

CONCLUSION

For the foregoing reasons, we affirm-in-part, vacate-in-part, and remand for further proceedings consistent with this opinion.